## L. A. Muse v. The State.

### No. 7280.    Decided March 31, 1923.

**1.—Pandering—Jury and Jury Law—Impartial Juror.**

Where, upon trial of pandering, defendant challenged the juror for cause which the Court overruled; and it appeared from the record on appeal that the declarations imputed to the juror, and which he did not deny, characterized him as a prejudiced juror and did not warrant the trial judge in concluding that the juror in question was an impartial juror, the same is reversible error.    Following Long v. State, 32 Texas Crim. Rep., 143, and other cases.

**2.—Same—Charge of Court—House of Prostitution.**

In view of the fact in evidence, and the manner in which the case was submittted to the jury, it called for an amendment of the charge so that some definition of a house of prostitution should be given to the jury, and that unless the conduct of the alleged female was known to the defendant, and was by him induced or encouraged to remain in the institution, a conviction could not be had.

**3.—Same—Charge of Court—Written Objections.**

In the absence of written objection to the Court's charge duly authenticated, the Court's charge cannot be reviewed, but in the event of another trial, and the same facts, notice should be taken of the fact that the alleged female was an accomplice witness.

Appeal from the District Court of Collingsworth.    Tried below before the Hon. J. A. Nabers.

Appeal from a conviction of pandering; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Templeton & Templeton* for appellant.—On question of impartial juror: Goble v. State, 42 Texas Crim. Rep., 501, Ross v. State, 53 id., 152; Holmes v. State, 52 id., 353; Keaton v. State, 40 id., 139; Gilmore v. State, 37 Id., 81.

*R. G. Storey,* Assistant, Attorney General, for the State.

MORROW, 'Presiding Judge.—The offense is pandering; punishment fixed at confinement in the penitentiary for a period of ten years.

The phase of the statute upon which the prosecution is founded is that which uses these words:

"Any person who shall, by promises, threats, violence or by any device or scheme, cause, induce, persuade or encourage an inmate of a house of prostitution to remain therein as such inmate, . . . shall be guilty of pandering, etc." (Art. 506a, Penal Code.)

Jeannie Coker, nineteen years of age, had been married but was divorced. She arrived in Wellington, Texas, about the middle of March and remained for ten days upon the premises of the appellant, who was conducting a hotel. She was employed to work therein and assist his wife in the household work, for which she was to receive 2.50 per week. She testified that she had with appellant further arrangements that she was to pursue the avocation of a common prostitute and that he was to share the receipts with her.

There was testimony introduced that during the ten days that she remained in the house, or sometime during this interval, the house bore the reputation of a house of prostitution, and there were two other women in the house who bore the reputation of prostitutes. That either of these women were in fact prostitutes and engaged in the acts of prostitution was denied by the testimony of the appellant and his wife, and the bad reputation of the women named by the State witness was also controverted by witnesses. One of them testified and denied that she was a prostitute. Appellant disclaimed any knowledge of the fact that Jeannie Coker was a prostitute or that she was engaged in the acts of prostitution, and his wife also testified to this fact. Both claimed that they saw nothing which led them to believe that she was a prostitute until the time of her arrest, at which time she immediately ceased to be an inmate of the premises. Any arrangement with the prosecuting witness or consent to her pursuing her avocation or sharing the receipts therefrom was specifically denied by the appellant.

At the same term of court, a few days previous to the present trial, the appellant was tried upon the same indictment, but owing to a disagreement of the jury, there was a mistrial of the case. During the first trial there appears to have been considerable interest and talk among the people of the town who frequented the courthouse, and according to the motion for new trial, one of the jurors who served in the instant case as foreman of the jury had expressed his opinion that the appellant was guilty. Appellant endeavored to have those jurors who had heard part of this trial and who had formed any opinion thereof discharged for cause. This was refused. The juror in question testified on his voir dire, in response to questions propounded by the appellant, that he had no opinion of the case that would influence his verdict; that such opinion as he had was from what he had heard upon the streets and not from the testimony of any witnesses.

On the hearing of the motion for new trial, several witnesses testified to declarations of the juror in question made previous to the impanelling of the jury, one of whom quoted him thus: ''That this man was guilty and he knew he was guilty.'' Another witness heard this juror say: ''If I had my way about it, I would send Muse to the pen for about seven years and the children to the orphans home and Mrs. Muse to the reformatory.''

Another witness declared that the juror had said during the previous trial: "Well, if they don't stick him, he ought to be taken out and tended to."

The juror, on the hearing of the motion for new trial, did not deny the conversations imputed to him. As to Riley, one of the witnesses on the trial, he said: "I don't remember for sure whether I had a conversation with him in regard to the case or not."

With reference to James, another witness, the juror said: "I did not have any conversation with this man James down there at the grocery store; I might have made some remark and he might have heard it. If I made any remark it was based solely on the street rumors because I didn't hear the first trial. . . . But I might have said that if the rumors that I had heard were true that he should be convicted. I don't remember saying how much he should get."

The juror further stated that he did not remember making the remarks imputed to him by the witness Pritchard; that he had only a short conversation with him; that he would not say that he did not have the conversation with Riley and that all that the witness said was not true, but he did not remember all that was said; that he did not claim that Pritchard's statement was not true, but did not remember the conversation. He denied making the unqualified declaration to Riley that he knew the appellant was guilty; that he based his statements on what he had heard on the streets from people who had attended the first trial.

We are of the opinion that the evidence on the hearing of the motion for new trial was not such as warranted the trial judge in concluding that the juror in question was an impartial juror. On the contrary, we think that the declarations imputed to him and which he did not deny, were such as characterized him as a prejudiced juror. The suspicion of unfairness should not rest upon the trial of one accused of crime. Long v. State, 10 Texas Crim. App. 186. A juror who has expressed himself as the record reflects in this case and who did not affirmatively declare his disqualification on his voir dire cannot be regarded as an impartial juror. Illustrative cases are numerous. Among them are Long v. State, 32 Texas Crim. Rep., 143; Hughes v. State, 60 S. W. Rep., 565; Graham v. State, 28 Texas Crim. App., 584; Washburn v. State, 31 Texas Crim. Rep., 353; Mitchell v. State, 36 Texas Crim. Rep., 319; Adams v. State, 92 Texas Crim. Rep., 264, 343 S. W. Rep., 475.

The appellant requested the court to instruct the jury in substance that the mere fact that Jeannie Coker was a prostitute and while an inmate of the hotel kept by appellant followed the avocation of a prostitute alone would not constitute the hotel a house of prostitution. This charge is not very artfully drawn, but it occurs to us that in view of the facts in evidence and the manner in which

the case was submitted to the jury, it called for an amendment of the charge so that some definition of a house of prostitution would be given to the jury, and that they would be made to understand that unless the conduct of Jeannie Coker was known to the appellant, and that she was by promises or devices of the appellant induced or encouraged to remain in the institution, a conviction could not follow.

The written objections to the court's charge which are found in the record are not authenticated in a manner that authorizes consideration as a basis for reversal. The same is true of some of the special charges, notably, the one requesting the court to define a house of prostitution. This was not defined in the main charge, nor was the appellant's defense, namely, that the woman in question was the only prostitute who was an inmate of the house and that he was without knowledge of the character or conduct of the woman. Special Charge No. 2, which the court refused and with reference to which there was a bill of exceptions properly preserved, would, in some degree, have supplied the omissions from the main charge.

We will add that on another trial on the same facts, note should be taken of the fact that Jeannie Coker was an accomplice witness.

The errors pointed out require a reversal of the judgment. It is so ordered.

*Reversed and remanded.*