O. C. WELLS v. THE STATE.

No. 11672. Delivered May 30, 1928.
Rehearing denied November 28, 1928.

The opinion states the case.

*Roy Hill* of Ballinger, *Patterson & Grantham* of Cisco, *McGregor & McGregor* of Austin, *Baker & Baker* of Coleman for appellant.

*Walter W. Early,* District Attorney of Brownwood, *Critz & Woodward* of Coleman, and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment death.

Deceased, J. A. Mitchell, was engaged in the grocery and filling station business in the town of Coleman. On the night of January 27, 1927, deceased, his wife, daughter and small granddaughter were in the filling station. The wife of deceased saw a man by the

side of the filling station in a stooped position. This man slipped along the wall until he reached the front door. He opened the door, came in and closed it. Deceased was about five or six feet from the door. He had his back to the door and was sweeping the room. The party who entered the door said to deceased: "Poke them up." Deceased turned and faced his assailant, who came to a point within two or three feet of deceased. The assailant of deceased presented a pistol, holding it in his right hand and pointing it toward the body of deceased. The parties faced each other for a minute or two and the assailant then pulled a handkerchief from his neck in such a manner as to cover his mouth. Before he raised the handkerchief the wife of deceased had closely observed his face. Deceased raised the broom in an effort to knock the gun from the hand of his assailant. When deceased raised the broom, his assailant fired and deceased stepped back two or three feet and fell. The wife of deceased and her daughter ran to a neighbor's for help. When they returned to the filling station they found deceased in a dying condition and shortly thereafter he expired. Appellant was positively identified by the wife and daughter of deceased as the perpetrator of the murder.

Appellant relied upon an alibi and offered witnesses who testified that appellant and Claude Maines were in the town of Sonora at about 2:30 o'clock p. m. on January 27, 1927; that said parties were in the town of Rocksprings about 4 or 5 o'clock p. m. on the same day; that on the night of January 27th, a burglary was committed in the town of Menard and that thereafter pursuant to a conversation with appellant the stolen property taken from the burglarized house was found; that none of the marks of identification had been removed from the stolen property. It was thus appellant's defense that he was at another and different place with Claude Maines at the time the offense was committed. Appellant did not testify in his own behalf.

A state's witness who was well acquainted with Claude Maines testified that he saw Maines in the town of Coleman during the afternoon of the homicide.

A careful review of the record leads us to the conclusion that the verdict of the jury is amply supported by the evidence. The distance from Coleman to Menard made it possible for appellant to commit the homicide in Coleman and the burglary in Menard on the same night. Hence, the state's admission that the burglary was committed in Menard was not destructive of the theory that appellant committed the murder in Coleman. The jury were fully warranted in rejecting

the testimony of the witnesses to the effect that appellant was in San Angelo, Sonora and Rocksprings on the morning and afternoon of January 27, and were further justified in concluding that appellant, after having murdered the deceased, had gone to Menard, committed the offense of burglary and directed the officers to the stolen property with its marks of identification for the purpose of concealing the murder he had committed.

Bill of exception Number 1 presents the following occurrence: After Mrs. Mitchell, wife of deceased, had positively identified appellant as the man who had killed her husband, she was asked on cross-examination by appellant if she had not consulted a clairvoyant with reference to the person who had shot her husband. She answered in the affirmative. Appellant then asked the witness if said clairvoyant had not described the man who killed her husband as being similar in appearance to appellant. The state's objection to this question was sustained. It is stated in the bill that "the defendant expected said witness to admit that the fortune teller had described a person similar in appearance to the defendant as the person who had committed the homicide, and it should have been considered a circumstance by the jury in passing upon the weight of the testimony of the witness in identifying the defendant upon the trial hereof." The bill does not disclose that it was appellant's purpose to inquire of the witness whether she was in any manner influenced by what the clairvoyant told her. There is no testimony in the record tending to show that the witness was doubtful of appellant's identity. No witness contradicted any statement she had made relative to appellant being the man who killed her husband. It would appear that appellant was attempting by proving a hearsay statement to lay a predicate for an argument to the effect that the witness had identified appellant because a clairvoyant had described to her a man similar in appearance to appellant. The jury had heard both the wife and daughter of deceased unhesitatingly identify appellant; they were aware that the wife had refused to identify a man, who, dressed similarly to appellant, had been presented to her; they knew that she had given a correct description of appellant immediately after the homicide. To hold that the excluded testimony, even if admissible, could have affected the verdict of the jury, would be to say that the jury would have probably concluded that the statements of a clairvoyant operated on the mind of the witness to the extent of depriving her of her understanding of the obligation resting upon her to testify truthfully, and of impelling her to name any person bearing a de-

scription similar to that detailed by the clairvoyant as guilty of an offense meriting the death penalty. We are unable to reach the conclusion that the matter complained of would warrant a reversal.

It is shown by bill of exception Number 2 that the rule had been invoked; that when it developed on cross-examination of a witness for appellant that said witness had talked to one Bill Chapel who was present in the courtroom during the examination, the state requested that Chapel be sworn and placed under the rule; and that appellant objected to placing said witness under the rule on the ground that such procedure was prejudicial to his rights, in that it was an effort on the part of the state to impeach appellant's witness without introducing the witness Chapel. Chapel was not used as a witness either by the state or by appellant. We see no abuse of the discretion vested in the trial court in placing the witness under the rule upon request of the state. In his Annotated Penal Code of Texas, at page 197, section 344, Mr. Branch states the rule as follows:

"A wide discretion is confided in the trial judge with regard to the application and the extent of the application of the 'rule' to the witnesses, and the exercise of this discretion will not be revised on appeal except in clear cases of abuse."

Appellant called a witness who testified that he presented a man to Mrs. Mitchell for the purpose of enabling her to determine whether or not he was the party who had shot and killed her husband. When this man was taken into the presence of Mrs. Mitchell she became excited, threw up her hands and screamed. These facts were evidently brought out by appellant for the purpose of discrediting the testimony of Mrs. Mitchell and impressing the jury with the fact that she was mistaken when she stated that appellant was the perpetrator of the crime. Over objection the state was permitted to show on cross-examination of the witness that he had a conversation with Mrs. Mitchell within an hour after he had presented the party to her and that she stated to him, in substance, that said party was not the man who killed her husband. Appellant contended that the testimony of said witness was hearsay inasmuch as he, appellant, was not present at the time the conversation was had. Appellant's objection was not well-taken. He introduced the act of Mrs. Mitchell in screaming for the purpose of discrediting her testimony. Having gone into the detailed act, it was permissible for the state to introduce in evidence the declaration of Mrs. Mitchell made to the same witness shortly thereafter for the purpose of making her act fully under-

stood. Unexplained, the act of the witness introduced by appellant was calculated to impress the jury with the view that she became excited because she believed that the party presented to her was the slayer of her husband. Article 728 C. C. P. provides:

"When part of an act, declaration, or conversation or writing is given in evidence by one party the whole on the same subject may be inquired into by the other, as, when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation or writing is given in evidence any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence." See Henry v. State, 291 S. W. 542.

In his motion for a new trial appellant alleged that a prejudiced juror had sat in the trial of the case. The court heard evidence on the question. The juror testified, in substance, that before being selected as a juror he heard Frank Rucker say that he took Mrs. Mitchell over to Abilene for the purpose of identifying appellant; that Rucker said that appellant was brought to the court house and that when he entered the door that Mrs. Mitchell recognized him, and appellant seemed to recognize her. The juror testified that he did not have any right to doubt what Mr. Rucker said about the matter, but declared that he went on the jury without any prejudice against appellant and without any opinion as to his guilt or innocence.

It appears from the testimony of the juror that he entertained no opinion as to the guilt or innocence of appellant at the time he was accepted as a juror. That he was in any manner prejudiced against appellant is not shown. There is nothing in his testimony indicating that he was a disqualified juror. The court would have properly overruled a challenge for cause if the juror had testified on his voir dire examination as he did on the hearing of the motion for a new trial. We fail to find any evidence showing that appellant was injured by virtue of the service of said juror. As far as the record is concerned he was not active as a juror in behalf of the state. He made no statement to the jury concerning the statement he had heard. The balance of the jury whose fairness is not questioned reached the same conclusion as did the juror who was assailed. In short, there is no evidence in the record showing that the juror was prejudiced against appellant. The rule applicable here is stated in Rogers v. State, 3 S. W. (2d Series) 455, as follows:

"Where there is no waiver of the challenge and no lack of diligence in discovering the existence of a ground for challenge to a

particular juror who is not absolutely disqualified, it appears to have been generally held in this state that service upon the jury of such a one will not be ground for new trial unless probable injury to accused is shown. Leeper v. State, 29 Tex. Cr. App. 63, 14 S. W. 398; Martinez v. State, (Tex. Cr. App.) 57 S. W. 838. For other authorities see note 53, art. 616, p. 52, vol. 2, Vernon's Ann. C. C. P."

Appellant further alleges in his motion for a new trial that the jury after retiring to deliberate upon the case received other testimony. It appears from the evidence heard by the court on the motion that after it had been determined that appellant was guilty of the offense with which he was charged and before the penalty had been assessed one of the jurors stated in the presence and hearing of the jury that at the time appellant was arrested he, appellant, had shot at a negro twice. It appears that the statement complained of was referred to one time. The evidence adduced on the trial of the case disclosed that appellant elicited from one of his witnesses that he, appellant, had related to the witness the circumstances surrounding the robberies committed at Menard and had confessed to the witness that he, appellant, committed said robberies; that he had burglarized the Piggly-Wiggly store in the town of San Angelo; that he had gone to Rocksprings for the purpose of robbing a bank. The evidence heard by the court on the motion for a new trial discloses that one of counsel for appellant made an opening statement to the jury wherein he said that at the time appellant was arrested he was an escaped convict.

The statute provides that a new trial shall be granted—
"when the jury, after having retired to deliberate upon a case, have received other testimony." Subdivision 7, Article 753, Code of Criminal Procedure.

Information given by one of the jurors to the others is new and other testimony within the meaning of the statute. Holland v. State, 298 S. W. 898, and authorities cited. In order to warrant a reversal of a case, a transgression against the statute must be such that it could have affected the fairness of the trial. In Hallmark v. State, 230 S. W. 697, Judge Morrow quoted from an opinion by Judge Ramsay, as follows:

"We think the true rule is that where, as in this case, the testimony supports the verdict, and the charge of the court properly submits the case to the jury, that a verdict ought not to be set aside for every incidental and casual mention of a former trial or a former conviction, and that in no case should it be set aside in a case tried

according to law, where the conviction is supported by the testimony, unless the court may fairly and reasonably see, in the light of all the circumstances, that such reference and discussion did or might have prejudiced the appellant's case."

The rule is that when the terms of the statute are violated the burden is not upon the accused to show injury, but upon the state to show the contrary. Hallmark v. State, supra. Appellant called one juror to testify to the reference complained of. The testimony of this juror discloses that such reference was but incidental. The remainder of the jurors were not called by appellant. Appellant makes the general allegation in his motion for a new trial that the jury discussed facts and matters not in evidence. He fails to set up what these facts were.. It is not clear either from the motion or the testimony of the juror that the alleged reference, if made, was not brought out on the trial in connection with one of the several offenses admitted to have been committed by appellant. Under the circumstances, it is questionable whether this court would be warranted in concluding that the trial judge was not justified in deciding the issue of fact against appellant. Be that as it may, the jury were in possession of facts showing that appellant was an escaped convict, that he had committed a series of robberies and burglaries and that he had intended to commit other offenses. In view of this record, showing as it does the criminal career of appellant, we are unable to conclude that the alleged reference was such as might prejudice appellant's case. Applying the rule announced in Hallmark v. State, supra, and the authorities therein cited, to the facts of the instant case, we are of the opinion that a reversal of the judgment is not authorized.

Finding no reversible error, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant insists that we were in error in sustaining the trial court's action in overruling the motion for new trial based upon a contention that Joe Arnold was a disqualified or prejudiced juror. Arnold testified upon his voir dire examination that from hearsay or otherwise there was not established in his mind

such a conclusion as to the guilt or innocence of accused as would influence him in arriving at a verdict and that he had no bias or prejudice one way or the other. The fairness of the juror is challenged on the ground that it developed after the trial that this juror had heard a statement made by Frank Rucker that the wife of deceased on the occasion shown in our former opinion had identified appellant. It must be borne in mind that Rucker was not a witness in the case. His statement to Arnold was purely hearsay. If Arnold had answered on his voir dire examination that he had an opinion based upon the hearsay statement of Rucker, but further stated that he felt able notwithstanding such opinion to render an impartial verdict, the court, if satisfied that said juror was impartial, would have been within his discretion in holding said juror competent, and this by reason of the statute itself, Art. 616 C. C. P., Subd. 13. In the present case the juror said he had no opinion whatever and upon the hearing of motion for new trial he again asserted that notwithstanding what Rucker had said in his presence and that he had no reason to doubt the truthfulness of his statement, still that when he went into the jury box he entertained no opinion as to the guilt or innocence of appellant which in any manner would or did influence his verdict. The record seems to be silent as to any inquiry of the juror on his voir dire examination which was calculated to elicit from him information as to what he had heard anybody say regarding the case. We think the juror cannot be classed as one having knowledge of some *fact* which he did not disclose and which characterized him as an unfair or prejudiced juror. Appellant cites Adams v. State, 92 Tex. Cr. R. 264, 243 S. W. 474; Muse v. State, 94 Tex. Cr. R. 71, 249 S. W. 861; McNeal v. State, 101 Tex. Cr. R. 114, 274 S. W. 981; Davis v. State, 101 Tex. Cr. R. 352, 275 S. W. 1029, upon the point discussed. They are not regarded as supporting appellant's position.

Appellant insists that we were in error in sustaining the trial court's action in permitting witnesses to detail what Mrs. Mitchell said to them after they had taken a person before her for inspection. The two witnesses were Mr. Hamilton, the sheriff, and Mr. Murray, the chief of police. Appellant proved that they took one Jones in the presence of Mrs. Mitchell and that she threw up her hands and screamed. The officers immediately removed Jones from her presence. The state then proved over objection that the sheriff returned within two or three minutes at which time Mrs. Mitchell told him Jones was not the man who killed her husband and that

within an hour she told the chief of police the same thing. The record shows there was a striking similarity between Jones and appellant. We think the incident properly disposed of in the original opinion as admissible to explain the action of Mrs. Mitchell.

Appellant urges that we were in error in disposing of his contention that the jury received other evidence after their retirement; this being the last question discussed in our original opinion. The wording of the opinion leaves the impression that one of the jurors stated as a fact "that at the time appellant was arrested he, appellant, had shot at a negro twice." In this respect the opinion dealt with the incident in a manner more favorable to appellant than the record warrants. Only one juror was examined by appellant upon the hearing of his motion for new trial. His evidence is brought forward and from it we learn that some of the jurors expressed curiosity as to why so many officers from Abilene were present at the trial, whereupon another juror said in substance that he understood or had heard there had been some shooting there, and that appellant had shot the negro twice. He did not state it as a fact within his own knowledge, but only that such was his understanding about it. The foregoing statement of the occurrence in the jury room shows clearly that it was merely an incidental reference to a matter which was never mentioned at any other time by any of the jury. There is no doubt in our minds that the question presented by the incident was correctly disposed of in our former opinion.

It is again vigorously insisted that the trial court was in error in not permitting Mrs. Mitchell to testify that a fortune teller had described as the murderer of her husband a person similar in appearance to appellant, and that our opinion disposing of this question is erroneous. If the fact of Mrs. Mitchell consulting the fortune teller was an incident upon which argument could be predicated that she was uncertain as to the description of the person who killed her husband appellant had the benefit of it for the court did permit the witness to tell the jury that she had consulted a fortune teller. That incident and the fact that she screamed and threw up her hands when another man strongly resembling appellant was brought before her, are the only acts on her part shown in the record which even remotely question her evidence positively identifying appellant as the slayer. If the bare hearsay statement of the fortune teller sought to be introduced in this instance should be held admissible where would the matter end? Surely if accused could question his identification by proving that a fortune teller described to the identifying

witness a man similar in appearance to accused the state with much force could insist that it be permitted to prove—if it could—that another fortune teller described to witness a person of entirely different description notwithstanding which the witness persisted in identifying accused as the slayer. The principle if thus extended would lead to an absurdity and a violation of all the rules of evidence.

Because the severest penalty known to the law has been assessed we have carefully re-examined the entire record to satisfy ourselves that no error was committed in the trial upon which a reversal should properly be predicated; such investigation confirms us in the belief that an affirmance of the judgment was properly ordered.

The motion for rehearing is overruled.

*Overruled.*