Kenneth Leroy McINTIRE,
Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 1174–83.

Court of Criminal Appeals of Texas,
En Banc.

June 26, 1985.

On Rehearing Oct. 30, 1985.

654

Jeffrey W. Jones, Harlingen, for appellant.

Reynaldo S. Cantu, Jr., Dist. Atty. & Malcolm S. Nettles, Asst. Dist. Atty., Brownsville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S AND APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offenses of aggravated sexual abuse of a child and of indecency with a child and assessed punishment by the jury of 25 years and 5 years, respectively, which terms of imprisonment were ordered to run concurrently by the trial court. Both convictions stemmed from a single indictment.

On appeal the Thirteenth Court of Appeals in Corpus Christi affirmed the conviction for aggravated sexual abuse, but reversed the conviction for indecency with a child. *McIntire v. State*, 662 S.W.2d 65 (Tex.App.—Corpus Christi 1983). The court ruled that the trial court, having found appellant guilty upon the jury's verdict as to the first count in the indictment, was without legal authority to enter a judgment and pronounce sentence on the subsequent count. Accordingly the judgment was reformed to reflect conviction of aggravated sexual abuse only. We granted the State's petition for discretionary review to examine this action by the court of appeals.

We also granted appellant's petition in order to review the judgment of the court of appeals insofar as it pertained to purported error in the trial court's disposition of appellant's motion for new trial.

### I.

The first count of the indictment alleged that on January 25, 1982 the appellant engaged in deviate sexual intercourse by placing his genitals in contact with the anus of the complaining witness, a child younger than fourteen years of age and not appellant's spouse. The third count alleged that on the same day appellant engaged in sexual contact by touching the genitals of the same complaining witness. Both acts are alleged to have been committed with intent to arouse and gratify the sexual desire of appellant.

The charge to the jury authorized it to convict appellant, should the proof warrant it, of both aggravated sexual abuse of a child [1] and indecency with a child. This the jury did. Guilt was adjudicated and punishment imposed in a single judgment.

Though no defect was called to the attention of the trial court or expressly argued to the court of appeals, the court of appeals nevertheless reformed the judgment to delete the conviction for indecency, relying on this Court's holding in *Ex parte Easley*, 490 S.W.2d 570 (Tex.Cr.App.1972) and *Garcia v. State*, 574 S.W.2d 133 (Tex.Cr.App. 1978).

This Court has recently reaffirmed that when separate and distinct offenses alleged in one indictment arise from a single criminal transaction, "the more reasoned view is that a trial court is 'without legal authority' to enter judgment and impose sentence for more than one offense. *Ex parte Easley*, [supra]." *Drake v. State*, 686 S.W.2d 935, 944 (Tex.Cr.App. 1985). Accordingly, in *Ex parte Siller*, 686 S.W.2d 617 (Tex.Cr.App.1985) we granted habeas corpus relief by vacating the second of two convictions which had been obtained at one trial on a single indictment. Because both convictions arose from a single criminal transaction, we did not look to see whether an objection had been lodged at trial or whether the error had been raised on appeal.[2]

---

1. Count two alleged appellant engaged in deviate sexual intercourse by placing his mouth in contact with the genitals of the complaining witness. The court's charge authorized conviction for aggravated sexual abuse upon proof of *either* the theory contained in count one *or* that contained in count two. In addition, in a separate "application" paragraph, the charge also authorized a conviction upon proof of facts going to establish the indecency allegation contained in the third count.

2. Objection *will* be required to preserve the error for appeal when separate and distinct offenses are alleged in, and convictions obtained from a single indictment where the offenses arose out of *different* transactions. *Drake*, supra, at 944.

Thus the court of appeals in the instant cause was correct in relying on *Easley,* supra, if it can be said that both offenses for which appellant was convicted grew out of the same criminal transaction. The evidence adduced at trial indicates they did.

■ Ms. Maria Gonzales testified that on January 25, 1982 she lived in an apartment right next door to appellant, that two windows of her apartment faced two of the windows in appellant's apartment, and that these facing windows were about six feet apart. Ms. Gonzales and two other witnesses, Efrain Estrada and Demetrio Medrano, testified that sometime in the early afternoon of January 25,[3] they together observed appellant through the facing windows performing anal intercourse upon the complaining witness.[4] Testimony of the eleven year old complaining witness confirmed this observation. Estrada also testified that at or about this same time he observed appellant's hand on the complaining witness' penis. The complaining witness confirmed at least that appellant "tried to grab" his penis.

Although the exact time frame within which the anal intercourse and the touching of the complaining witness' genitals occurred is not well developed in the record, it is clear from the accumulation of testimony that these acts took place either contemporaneously or within minutes of one another. Further, it is clear that a single guilty intent ran through and connected both acts, *viz:* the intent to arouse and gratify the appellant's sexual desire through some form of sexual contact[5] with the complaining witness. See *Drake,* supra, citing *Banks v. State,* 93 Tex.Cr.R. 117, 246 S.W. 377 (1922) and *Crawford v.*

*State,* 31 Tex.Cr.R. 51, 19 S.W. 766 (Ct. App.1892).

We conclude that the allegations of aggravated sexual abuse of a child and of indecency with a child arose in the same criminal transaction. The trial court was therefore without legal authority to authorize a conviction on both count one and count three of the instant indictment, and the court of appeals was correct to reform the judgment as it did. *Drake,* supra. *Siller,* supra.

## II.

### A.

Appellant was sentenced on May 13, 1982. On May 24 appellant filed a *pro se* motion through which he "NOTIF[IED] [the district] COURT OF HIS INTENTION AND DESIRE TO APPEAL FOR NEW TRIAL." It is not clear whether this handwritten motion was meant to be a notice of appeal or a motion for new trial. What is certain from the motion is that appellant's attorneys were out of town and appellant, operating upon the erroneous assumption that some document had to be filed within "THE 10 DAY PERIOD OF TIME ALLOWING APPEAL,"[6] was attempting to protect his right to pursue a new trial in any fashion open to him. A formal motion for new trial with supporting affidavits was filed on June 11, along with a motion to set a hearing on the motion for new trial. In its order dated June 14, denying the latter motion, the trial court found the motion for new trial to have been "untimely filed, Notice of Appeal having been given May 24, 1982. Such motion additionally presents nothing for hearing." A formal notice of appeal was filed on June 24.

---

3. The witnesses' testimony varied as to the exact time, with estimates ranging between 11:00 a.m. and 2:00 p.m.

4. The witnesses' testimony also varied as to the exact location and respective postures of appellant and the complaining witness during this act.

5. V.T.C.A. Penal Code, § 21.01(2) defines sexual contact to mean *"any* touching of the anus, breast, or any part of the genitals of another

person with intent to arouse or gratify the sexual desire of any person." (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

6. Motion for new trial must be filed within 30 days of imposition of sentence, Article 40.05(a), V.A.C.C.P. Where no motion for new trial is filed, notice of appeal must be filed within 15 days of sentencing, Article 44.08(b), supra.

On appeal it was contended that the trial court erred in finding appellant's motion for new trial to have been untimely filed, in finding that said motion presented "nothing forhearing," and in overruling same without granting a hearing. The court of appeals concurred in the trial court's determination that the motion and supporting affidavits presented no matter calling for a new trial, and for this reason found the trial court's determination that the motion was untimely presented to have been harmless; "that is, none of his grounds of error were waived, and he is not prejudiced on this appeal." *McIntire*, supra, at 68. Further, finding that the record and supporting affidavits were a sufficient basis upon which the trial court could evaluate the contentions in appellant's motion for new trial, the court of appeals found no abuse of discretion by the trial court in overruling the motion without a hearing.

### B.

■ Initially we observe that the trial court did err in ruling appellant's motion for new trial to have been untimely presented. The trial court apparently construed appellant's *pro se* motion of May 24 to be a notice of appeal, the filing of which divested the court of jurisdiction to entertain the subsequent motion for new trial. However, this Court has recently held that notice of appeal filed prior to an otherwise timely filed motion for new trial will *not* deprive the trial court of jurisdiction to rule on that motion. *Ex parte Drewery*, 677 S.W.2d 533 (Tex.Cr.App.1984). Assuming then as the trial court did, that appellant's *pro se* motion was a notice of appeal, this would not prevent the trial court from ruling on the motion for new trial. Inasmuch as its denial of the motion for new trial and failure to set a hearing thereon were prem-

ised on the untimeliness of the motion, the trial court erred.

Whether this error was harmless, as the court of appeals ruled, depends upon our resolution of appellant's remaining contentions. To these we now turn.

### C.

In his brief to the court of appeals appellant identified three points upon which he contended his motion and affidavits presented matters which should have been taken up in a hearing. He argued that the affidavit of one of the jurors at his trial showed "an implied agreement by the jurors to abide by [a] quotient verdict;" [7] that one of his own character witnesses conversed prejudicially with the affiant juror during a break in the jury's deliberations;[8] and that jury misconduct in the form of a discussion of parole "resulted in an unfair verdict against [appellant] and was fundamental error in violation of due process of law." [9] In conclusion appellant asserted that "[b]ecause of these matters, and other matters set out in the Motion for New Trial, the trial judge should have heard the motion."

The court of appeals examined each of these grounds for new trial in turn, and, based upon "the record itself and ... the juror's affidavit," agreed with the trial court that the motion for new trial "presented nothing for hearing." Having found the affidavit insufficient to establish any complete grounds for new trial, the court of appeals then ruled, paradoxically, that the juror's affidavit was all the trial court needed to dispose of appellant's claims, and overruled his contention that he had an absolute right to have his motion heard.

■ In essence the court of appeals thus ruled that an affidavit attached to a motion

---

7. See Article 40.03(3), V.A.C.C.P.

8. See Article 40.03(7), V.A.C.C.P.

9. Although improper discussion of parole by the jury may be cognizable under either §§ 7 or 8 of Article 40.03, V.A.C.C.P., see *Diaz v. State*, 660 S.W.2d 93 (Tex.Cr.App.1983), the language used

in appellant's motion for new trial seems to invoke § 8 in its implication that appellant was denied a "fair and impartial trial." Either way the Court will now apply the "five prong test" enunciated in *Sneed v. State*, 670 S.W.2d 262, 266 (Tex.Cr.App.1984), see n. 15, *post*.

for new trial must establish a *prima facie* case for at least one cognizable ground for new trial before a hearing on the motion is required. In this the court of appeals erred. This Court has never articulated such a requirement.

■ In *Hicks v. State*, 75 Tex.Cr.R. 461, 476, 171 S.W. 755, 763 (Tex.Cr.App.1914) it was said that "in order for appellant to have had considered his ground of motion attacking the verdict of the jury *on any matter extrinsic the record itself,* as a matter of *pleading*, he must support it by his own affidavit or the affidavit of someone else specifically showing the truth of the grounds of attack." Elsewhere we have stated that a motion for new trial which alleges, *inter alia*, jury misconduct "must be supported by the affidavit of a juror or some other person who was in a position to know the facts, or must state some reason or excuse for failing to produce the affidavits." *Dugard v. State*, 688 S.W.2d 524, 528 (Tex.Cr.App.1985) and cases cited therein. The policy underlying this pleading requirement is to prevent "fishing expeditions." *Hicks*, supra, *Dugard*, supra. See also *Bearden v. State*, 648 S.W.2d 688 (Tex.Cr.App.1983).[10] Never has the Court held, however, that before a hearing is necessitated the affidavits must reflect every component legally required to establish a claim of jury misconduct.[11]

■ This is not to say that affidavits may not serve as proof on a motion for new trial. Indeed, Articles 40.03(8) and 40.06, V.A.C.C.P. mandate otherwise. Should he feel, then, that his affidavit *does* suffice to establish every facet of a claim of jury misconduct, or of any other cognizable ground for new trial with which the State may take issue, an accused may have said affidavit introduced into evidence, and the matter may be resolved exclusively on that basis. In order to so introduce his affidavits, however, a *hearing* is required. *Stephenson v. State*, 494 S.W.2d 900 (Tex.Cr.App.1973); *Brown v. State*, 505 S.W.2d 277 (Tex.Cr.App.1974); *Rios v. State*, 510 S.W.2d 326 (Tex.Cr.App.1974); *Pinson v. State*, 530 S.W.2d 946, 947 (Tex.Cr.App.1975); *Lamb v. State*, 680 S.W.2d 11 (Tex.Cr.App.1984).

■ As a matter of pleading and as a prerequisite to obtaining a hearing, keeping in mind that the purpose of the affidavit requirement is to limit the parameters of the hearing that is sought, we hold that an affidavit is sufficient if it demonstrates that reasonable grounds exist for believing that jury misconduct occurred,[12] a quotient verdict was agreed upon, or a juror conversed with an unauthorized person regarding the case.

Next we turn to an examination of the juror's affidavit in this case to determine, applying the above standard, whether it was sufficient to entitle appellant to a hearing.

#### D.

■ Relative to appellant's allegation that the jury's verdict was decided by quotient, the juror's affidavit stated:

10. Appellant's motion for new trial was not verified. However, because it was supported by affidavits, such verification of the motion itself was unnecessary. *Bearden v. State*, supra, overruling *Cartwright v. State*, 612 S.W.2d 609 (Tex. Cr.App.1981).

11. We have not held, for instance, that the affidavit itself, standing alone, must establish each of the five prongs of the test enunciated in *Sneed v. State*, 670 S.W.2d 262 (Tex.Cr.App. 1984), see n. 15, *post*, before a hearing must be held on the issue of parole discussion in the jury room. Nor did we hold, prior to *Sneed*, that an affidavit must show, *prima facie*, that some discussion of parole laws occurred which *unquestionably* denied the accused a fair and impartial trial, under the now abandoned standard in

*Munroe v. State*, 637 S.W.2d 475 (Tex.Cr.App. 1982).

12. In *Dugard*, supra, at 531, it is suggested in dictum that, at least where an affidavit purports to raise an issue as to the discussion of parole law in the jury room, the affidavit must establish "probable cause" to believe this violation occurred. This is an anomalous standard when one considers the holding of this Court that when juror affidavits are shown to be unavailable to the accused, he may nevertheless otherwise show "reasonable grounds for believing that misconduct actually occurred." *Stephenson v. State*, supra, at 909; *Prince v. State*, 158 Tex.Cr.R. 320, 254 S.W.2d 1006, 1011 (1953). Upon this showing the accused is entitled to be heard.

"On the morning that we began deliberating on the punishment to be given [appellant], there was some disagreement between us as to how many years he should get. I though he ought to get at least ten years because if he got less than ten years we would all have to decide whether to give the defendant probation. And I remember that we couldn't agree right away how much punishment he should get. . . .

"After lunch I remember one of the jurors suggested we ought to figure out what each one of us thought [appellant] should get and then we should just take the average. He thought that that would be a good way to do it. One of the other jurors, a slim Mexican-American man, said that if we were going to do that, then he thought [appellant] should get fifty years. I figure he wanted to make his number high so the average would be higher. . . . Anyway, we made out little slips of paper with the number of years we thought he should get on it and one of the women jury members came around and picked it up. Then we averaged them all up and the average was twenty-seven years.

The two jurors who were holding out for less than ten years agreed to change to twenty-five years and that's how we all finally agreed to twenty-five years. You know it's hard to agree about how many years a guy like that ought to get."

While it is true that, as the court of appeals concluded, there is no express showing of an advance agreement to abide by the quotient, see *Martinez v. State*, 496 S.W.2d 612 (Tex.Cr.App.1973), such an agreement is at least implied. That is all that is required to obtain a hearing, wherein the existence *vel non* of such an advance agreement can be thoroughly investigated.

 The affidavit also contains the following account of an encounter between the affiant juror and one of appellant's own character witnesses:

"During the evening adjournment the [sic] guilt/innocence phase, after I had picked up my newspaper from the jury room I got in the elevator to leave. While I was on the elevator one of the witnesses came over to me and saw my jury button and asked which court I was in. I told him I was in Judge Hester's court. He asked me if it was [appellant's] case and I nodded my head—I didn't say anything to him. He said, 'What do you do with a guy like that?' The witness was the older one of the two Mormons who testified. I didn't say anything, I just left."

The court of appeals found this exchange not to concern the *specifics* of appellant's case, and implied that it did not rise to the level of "conversation" prejudicial to appellant. However, it is clear that the witness' remark pertained to appellant's case. Such an exchange need not constitute a full blown discussion of the specifics of a given case before harm may result.[13] The affidavit was a sufficient pleading to invoke the presumption that an accused has been injured when an impaneled juror communicates with an unauthorized person about a case. *Romo v. State*, 631 S.W.2d 504 (Tex. Cr.App.1982). If introduced as evidence *at the hearing*, the affidavit would thus put the State to its proof, to rebut the presumption, either by testimony or by counter affidavit. See 25 Tex.Jur.3rd, Criminal law § 3518.[14]

---

**13.** The court of appeals relied on *Romo v. State*, 631 S.W.2d 504 (Tex.Cr.App.1982) for its holding that because the "specifics" of appellant's particular case were not discussed, no harm is shown. However, in *Romo* the police officer had no knowledge whatsoever of the accused's particular case and therefore could not have discussed the "specifics" with the juror. He could inject only the "rank generality directed toward all defendants," *id.*, at 506, that they should all be convicted. The distinction between this and the instant situation is obvious.

**14.** The *initial* burden is on the defendant to show the communication pertained to his case, of which the unauthorized party had knowledge. From there, harm is presumed, and the burden shifts to the State to defeat the presumption. See *Romo v. State*, supra, and cases cited therein at 506.

As to parole discussion in the jury room the affiant stated:

"If we had agreed on ninety-nine years, it wouldn't have mattered to me because you figure he'll get out on parole sooner or later. Of course we all discussed parole several times before we finally agreed on the twenty-five years. I remember someone saying during one of the discussions about parole, 'How do you rehabilitate a man like that?' "

Clearly, standing alone, this statement would not suffice to establish jury misconduct under the test in *Sneed v. State*, 670 S.W.2d 262 (Tex.Cr.App.1984).[15] It was sufficient, however, to put the trial court on notice that reasonable grounds exist to believe misconduct occurred.

We find, in short, that any one of the three bases for new trial discussed by the court of appeals were pled sufficiently to entitle appellant to a hearing thereon.

### E.

Because we find appellant's motion for new trial and supporting affidavit to comprise a sufficient pleading, we agree with appellant that he should have been afforded a hearing on the motion. Under art. 755 (1925), the direct predecessor to our current Article 40.05, V.A.C.C.P., it has been held that "[t]he right to file *and have heard* a motion for new trial is deemed absolute, provided the right is asserted within the time specified by law." *Synagogue v. State*, 122 Tex.Cr.R. 472, 55 S.W.2d 1052, 1053 (1932). As we have already determined, appellant's motion and affidavits were timely filed. *Drewery v. State*, supra; Article 40.05(a), supra. The order denying appellant's motion reflects that within ten days of its having been filed said motion was presented to the trial court. Article 40.05(d), supra. In short, the motion for new trial was in all things a timely and sufficient pleading.[16]

In *Appleman v. State*, 531 S.W.2d 806, 810 (Tex.Cr.App.1976) and *Powell v. State*, 502 S.W.2d 705, 711 (Tex. Cr.App.1973) it was iterated that:

"The trial court is the place to decide issues of fact as to what occurred in the jury room. That decision will not be disturbed by this Court in the absence of an abuse of discretion."

Where the evidence adduced at the hearing conflicts, it is not an abuse of discretion for the trial court to deny a motion for new trial. *Appleman v. State*, supra. Furthermore, in *Darrington v. State*, 623 S.W.2d 414 (Tex.Cr.App.1981), a panel of this Court found no error in overruling a motion for new trial without a hearing when *no* affidavit was filed in support of the defendant's claim of jury misconduct, and all other grounds raised in the motion were determinable from the trial record. See also *Garza v. State*, 622 S.W.2d 85 (Tex.Cr. App.1981). In another context, however, we have observed that a motion for new trial hearing "is the only opportunity to present to the trial court certain matters that may warrant a new trial, and to make a record on those matters for appellate review." *Trevino v. State*, 565 S.W.2d 938, 940 (Tex.Cr.App.1978). In the face of a timely motion for new trial supported by sufficient affidavit, a trial court which denies an accused this opportunity abdicates its fact finding function and denies the accused a meaningful appellate review. Such was the case here, and we find, therefore, that the trial court in the instant cause abused its discretion in denying appellant a hearing on his motion for new trial.

---

**15.** That test would require the defendant to show: (1) that a misstatement of the law (2) asserted as a fact was made (3) by someone professing to know the law (4) which was relied upon by other jurors (5) who for that reason changed their vote to a harsher punishment.

**16.** That a motion for new trial is susceptible to being overruled by operation of law 75 days after the date of imposition of sentence pursuant to Article 40.05(c), V.A.C.C.P. does *not* mean that an appellant whose motion is timely filed and timely presented to the court, with adequate supporting affidavits, is *not* entitled to a hearing on that motion as an absolute right—contrary to the conclusion of the court of appeals, 662 S.W.2d at 69.

As in *Trevino v. State,* supra, the cause is remanded to the trial court for a hearing on appellant's motion for new trial.[17]

### III.

Accordingly, the judgment of the court of appeals in reforming the judgment to delete appellant's conviction for indecency with a child is affirmed. However, in its holding that the trial court did not abuse its discretion in failing to grant a hearing on appellant's motion for new trial, the judgment of the court of appeals is reversed. The cause is remanded to the trial court for a hearing on motion for new trial.

ONION, P.J. dissents.

TEAGUE, J., concurs in result reached in Part I of the majority opinion and joins the remainder of the opinion.

## OPINION ON APPELLANT'S MOTION FOR REHEARING ON PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

By way of motion for rehearing appellant now assails the remedy granted in our opinion on original submission. Specifically he contends that "the action of the trial court in denying a hearing on the motion [for new trial] ... amounts to a constraint or curtailment of the Appellant's absolute right to a full, free and fair presentation of the evidence in support of the motion which was clearly prohibited in [*Jackson v. State,*

167 Tex.Cr.R. 34, 318 S.W.2d 98 (1958) ]." [1] On this basis he contends he should be granted, not merely a belated hearing on his motion for new trial, but the new trial itself.

In *Jackson v. State,* supra, a hearing was held on the defendant's motion for new trial wherein she alleged that the jury had impermissibly discussed her failure to testify during its deliberations. The judge in *Jackson* commandeered examination of appellant's first witness, a juror, and upon ascertaining that the witness had mentioned the defendant's failure to testify to other jurors in the jury room, cited him for contempt for having disobeyed the jury instruction that no such mention be made. Before the second juror/witness began testimony, the trial court reread to him that jury instruction. This Court ruled that such behavior on the part of the trial court was "reasonably calculated to constrain the witnesses and curtail their testimony, which was prejudicial to the rights of the [defendant]," *id.,* at 102, and remanded the cause for a new trial.

Even appellant admits, however, that "the trial court in the instant case cannot be charged with the overt acts so obviously calculated to 'chill' the testimony of the jurors in [*Jackson* ]." Nevertheless he argues that "the inevitable prejudicial effect of the passage of over three years" since hearing on his motion for new trial was denied has deprived him of his right to a free, fair and full presentation of evidence in support of that motion.

**17.** Appellant argues that his conviction should be reversed and remanded for a new trial on authority of *Jackson v. State,* 157 Tex.Cr.R. 323, 248 S.W.2d 748 (1952) and *Cross v. State,* 627 S.W.2d 257 (Tex.App.—Fort Worth 1982, pet. ref'd).

In *Jackson,* however, the Court observed that "[t]he sole question presented for review is the refusal of the trial court to *grant* appellant's amended motion for new trial based upon misconduct." 157 Tex.Cr.R. at 324, 248 S.W.2d at 748. Thus, it is clear that, while noting that "[t]he affidavit was sufficient to support the allegations of jury misconduct, and the trial court was not warranted in declining to hear testimony thereon[,]" *id.,* the Court found the defendant's affidavits sufficient to entitle him,

not only to a hearing, but also to the new trial he sought.

The affidavits in the instant cause do not of themselves entitle appellant to a new trial. They do entitle him "to present to the trial court certain matters that may warrant a new trial, and to make a record on those matters for appellate review." As we did in *Trevino v. State,* supra, we here remand the cause to allow appellant a meaningful albeit somewhat belated, review of the contentions raised in his motion for new trial.

**1.** *Not,* it should be noted, the same *Jackson v. State,* relied on by appellant in arguing for a new trial on original submission. See n. 17, *ante.*

We refuse to indulge such a presumption of prejudice, however. Instead, the cause is returned to the trial court for a preliminary hearing to determine the feasibility, at this late date, of holding a hearing wherein appellant may obtain a free, fair and full presentation of evidence in support of his motion for new trial. At such preliminary hearing the burden will be on appellant to prove, by a preponderance of the evidence, that a free, fair and full presentation of evidence is *not* feasible. That proof may be made by affidavits of jurors, or by affidavit of counsel demonstrating the unavailability of jurors or other relevant witnesses after a reasonable effort has been made to secure their presence. Present recollection of such jurors and other relevant witnesses should be taken into consideration. We believe such a procedure comports with due process.[2]

The cause is therefore remanded to the court of appeals with orders that that court abate the appeal and remand the cause for preliminary hearing as described above, and if found feasible, for hearing on motion for new trial. Should appellant sustain his burden of showing *in*feasibility of hearing on motion for new trial, or if after hearing on motion for new trial appellant's motion is granted, the cause will be docketed for a new trial. In the event the trial court should rule the hearing on motion for new trial *feasible*, conduct such hearing, and then deny the motion, appellant may appeal to the court of appeals any asserted error in the feasibility hearing, and any assertion of abuse of discretion in denial of the motion for new trial.

ONION, Presiding Judge, dissenting.

To the original majority opinion I dissented without written opinion. My dissent was based on returning the cause to the trial court for a hearing on the motion for new trial more than three years after the fact. It was not my intention to dissent to

the holding that the offenses of aggravated sexual abuse of a child and of indecency with a child arose in the same transaction, and that the trial court was without authority to authorize a conviction on both counts one and three of the indictment. The Court of Appeals was correct in reforming the judgment as it did. I concur in that part of the majority opinion.

Now on rehearing the majority has added insult to injury. It has "invented" a new procedure, a dangerous new judicial precedent.

The issue in this case is clear cut. If the pleadings for a new trial were adequate, and timely presented, the trial court erred in refusing to hear the motion for new trial and the appellant is entitled to a reversal. If, on the other hand, the pleadings were inadequate as found by the trial court and the Court of Appeals, the appellant is entitled to no relief. To invent a new procedure involving abatement and including a feasibility study or hearing in the trial court to determine if a hearing on the motion for new trial can now be conducted three years after the fact is judicial nonsense. Why do we prolong the delay and the finality of judgment in criminal cases in this manner?

It should be made clear just exactly why appellant's petition for discretionary review was granted by this Court. The trial court overruled the motion for new trial without a hearing finding that said motion had been untimely filed in view of the earlier notice of appeal, and further finding the motion presented "nothing for hearing."

The unsworn motion for new trial contained a number of allegations, a number of them general in nature. Three affidavits were attached. The affidavit of juror Gregory related to the allegations of jury misconduct concerning a quotient verdict, discussion of parole laws in the jury room,

---

**2.** Compare *Brandon v. State*, 599 S.W.2d 567 (Tex.Cr.App.1980) wherein, upon finding that a retrospective hearing to determine defendant's competency to stand trial was feasible, this Court resolved all grounds of error pertaining to

the actual trial on the merits, but abated the cause for such retrospective competency hearing. The judgment in *Brandon* was subsequently vacated on another point, 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981).

and his (juror's) conversation with a third person out of the court's presence.

On appeal, inter alia, appellant complained in his first ground of error of the trial court's ruling that his right to file the new trial motion was waived because of the previous notice of appeal. He also complained in a second ground of error of the trial court's ruling that nothing was presented for hearing in light of juror Gregory's affidavit concerning the three matters set out above.

The Court of Appeals found that appellant was not harmed by the trial court's ruling as to "waiver" because the decision to overrule the motion for new trial was also based on the fact the motion presented "nothing for hearing" and the grounds of error as to the latter ruling were not waived and he was not prejudiced on appeal. As to the matters of alleged jury misconduct, the Court of Appeals found no error in the overruling of the motion for new trial. As to a third ground of error the Court of Appeals rejected appellant's contention he was entitled to an evidentiary hearing on his new trial motion as a matter of law. *McIntire v. State,* 662 S.W.2d 65 (Tex.App.—Corpus Christi 1983).

Appellant's first three grounds for review corresponded to the first three grounds of error overruled by the Court of Appeals. It was these three grounds of review, and only these upon which this Court granted appellant's petition for discretionary review.[1]

With that as a background the record sub judice is examined. On May 10, 1982, the trial jury was chosen. On May 11 and 12, 1982, the guilt stage of the trial was conducted and completed. On May 13, 1982, the jury assessed punishment at the penalty stage of the trial. On the same date the trial judge pronounced judgment and imposed sentence in open court. On May 19, 1982, the court signed a written order appointing Honorable Jeffrey Jones as counsel for appellant, whom the court found to be too poor to employ counsel. The order was entitled "Order Appointing Attorney For Appeal Only" and was filed on May 25, 1982. Jones replaced Honorable Tom Fleming, court-appointed trial counsel. The formal judgment and sentence were "Signed For Entry: May 24, 1982" by the trial judge. Also filed on May 24, 1982 was the pro se handwritten "Notifies Court of His Intention And Desire To Appeal for New Trial." It was dated May 21, 1982. In such signed but unsworn instrument it was stated that both Jones and Fleming were out of town and were not expected to return until after "time allowing appeal has passed" and it prayed "that the Court will accept the notice." On June 4, 1982, Attorney Jones filed a "Designation of Record on Appeal" listing 33 items to be included in the appellate record. On June 8, 1982, the court heard the said "Designation" and granted the same. It was then on June 11, 1982 that the motion for new trial was filed. It was signed by Attorney Jones, but it (motion) was not sworn to by the appellant or Jones. There were three affidavits attached. Two of these did not relate to jury misconduct. The other affidavit was by John Gregory, a juror at appellant's trial, which had reference to a statement made to him outside the courtroom by a defense witness, the mention of parole in the jury room, and the averaging of jurors' votes on punishment. On June 14, 1984, the trial judge entered an order finding the motion for new trial to have been untimely filed in view of the notice of appeal given May 24, 1982, and further finding the motion presented "nothing for hearing." The motion was overruled.

In one of his grounds of review the appellant complains of the Court of Appeals' ruling that he was not harmed by the trial

---

1. The majority in its original opinion stated:
 "We also granted appellant's petition in order to review the judgment of the court of appeals insofar as it pertained to purported error in the trial court's disposition of appellant's motion for new trial."

Actually our grant was much narrower than indicated by the majority. Clarification may be needed in view of the majority's instant disposition of this cause and numerous other allegations in the motion for new trial not involving alleged jury misconduct.

court's ruling that the motion in question was untimely in view of the notice of appeal. The basis of the Court of Appeals' ruling was that the motion for new trial was also denied for another reason which was duly considered.

After the granting of the petition for discretionary review, the majority of this Court in its original opinion scolded the trial judge for considering the pro se May 24th "motion" as a notice of appeal, even though the unsworn "motion" did not contain grounds for a new trial,[2] and could have been considered as a notice of appeal, see and cf. *Allen v. State*, 536 S.W.2d 364 (Tex.Cr.App.1976), and even though appellant's own counsel considered it as a notice of appeal and thereafter filed a "Declaration of Record on Appeal." In determining the trial judge erred in considering the new trial motion untimely filed because of the previously filed notice of appeal, the majority cited *Ex parte Drewery*, 677 S.W.2d 533 (Tex.Cr.App.1984), which was decided two years and two months after the trial court's ruling.

Prior to September 1, 1981, normally a motion for new trial had to be filed prior to sentence being imposed and notice of appeal was given after sentence was imposed. Article 44.08, V.A.C.C.P.; *Ex parte Drewery*, supra. As a result of Acts 1981, 67th Leg., p. 814, ch. 291, eff. Sept. 1, 1981, many of our well established procedures were changed. Our present unorderly procedure permits the giving of the notice of appeal, notification of the appeal to the Court of Appeals in other than death penalty cases (Article 44.08, V.A.C.C.P., as amended 1981), and the commencement of the preparation of the appellate record, and at the same time permits a subsequent but timely filing of the motion for new trial to be heard by the trial court. *Ex parte Drewery*, supra.[3] Considering that in view

of the new procedures the trial judge in the instant case should not have held the motion for new trial untimely filed, I agree with the Court of Appeals that the trial judge's action was harmless since the motion for new trial was overruled on another basis which can be considered.

Turning to the question of whether the trial court erred in overruling the motion for new trial because "nothing" was presented, an examination of some authorities are in order.

In Tex.Jur.3rd, Criminal Law, § 3549 (Misconduct of Jury), p. 471, it is stated:

"In order to necessitate an inquiry as to misconduct of the jury, there should be in the motion for new trial *specific averment disclosing culpable misconduct*. A motion is insufficient if it does not inform the court with respect to the alleged misconduct."

In § 3539 of the same authority at p. 460 it is written:

"The court may refuse to entertain a motion that is ambiguous, too general, or indefinite. A defendant is not entitled to a hearing on a motion for new trial to develop more facts to show error where none is reflected in the record."

A motion for new trial is insufficient when it merely expresses thought that misconduct has occurred and seeks to examine the jury to determine the matter, *Prince v. State*, 254 S.W.2d 1006 (Tex.Cr.App.1953), or merely makes a general allegation the jury discussed facts and matters not in evidence, but it is not alleged that subject was not brought out on trial. *Wells v. State*, 10 S.W.2d 991 (Tex.Cr.App.1928).

Although the Code of Criminal Procedure has never required that a motion for new trial be verified, case law has long held that without verification a motion for

---

**2.** The majority, referring to the instrument as a "motion" rather than a notice of appeal, asserted "what is certain from the motion is that appellant's attorneys were out of town." The motion was unsworn and no evidence supports the assertion or the majority's conclusion of certainty if material.

**3.** The new procedure as to giving of the notice of appeal in criminal cases and the subsequently filed motions for new trial have caused confusion as well as questions of jurisdiction. See, e.g., *Mayfield v. State*, 627 S.W.2d 474 (Tex.App. —Corpus Christi 1981); *Hall and White v. State*, 698 S.W.2d 150 (Tex.Cr.App.1985).

new trial based on jury misconduct is insufficient as a pleading, *Bearden v. State,* 648 S.W.2d 688, 690 (Tex.Cr.App.1983), and its overruling cannot be assigned as error. *Hunt v. State,* 317 S.W.2d 743 (Tex.Cr.App. 1958); 25 Tex.Jur.3rd, Criminal Law, § 3538, pp. 455–456. The motion should be sworn to either by the defendant or his counsel. The motion is normally insufficient if it is signed by counsel but is not sworn to him or the defendant. See 25 Tex.Jur.3rd, Criminal Law, § 3538, p. 456; *Martin v. State,* 334 S.W.2d 796 (Tex.Cr. App.1960). It has been said such an unverified motion is fatally defective. *Carruthers v. State,* 143 Tex.Cr.R. 45, 156 S.W.2d 988 (1941). It presents nothing for review. *Pate v. State,* 171 Tex.Cr.R. 126, 345 S.W.2d 532 (1961).

In addition to a verified motion for new trial, it is well established that a motion for new trial alleging jury misconduct must be supported by the affidavit of a juror or some other person who was in a position to know the facts, or state some reason or excuse for failing to produce the affidavits. *Dugard v. State,* supra; *Procella v. State,* 395 S.W.2d 637 (Tex.Cr.App.1965); *Mason v. State,* 459 S.W.2d 855 (Tex.Cr.App.1970); *Howard v. State,* 484 S.W.2d 903 (Tex.Cr. App.1972); *Story v. State,* 502 S.W.2d 764 (Tex.Cr.App.1973); *Duggard v. State,* supra. See also *Vyvial v. State,* 111 Tex. Cr.R. 111, 10 S.W.2d 83 (1928) (on rehearing); *Bearden v. State,* supra, at 690.

It is an essential element of the rule that each separate allegation in the motion for new trial based on jury misconduct must be supported by the attached affidavit. Such an affidavit should conform to the rule applicable to affidavits generally. And an affidavit is manifestly insufficient if it consists only of hearsay or conclusions, or is of a vague and inconclusive character. 25 Tex.Jur.3rd, Criminal Law, § 3540, pp. 461–462.

A motion for new trial on the ground of jury misconduct not supported by an affidavit of a juror or another person in a position to know the facts is insufficient as a pleading. *Roberson v. State,* 160 Tex.

Cr.R. 381, 271 S.W.2d 663 (1954); *Clifton v. State,* 170 Tex.Cr.R. 245, 339 S.W.2d 902 (1960); *Marquez v. State,* 172 Tex.Cr.R. 363, 356 S.W.2d 797 (1962); *Lolmaugh v. State,* 514 S.W.2d 758 (Tex.Cr.App.1974); *Garza v. State,* 622 S.W.2d 85 (Tex.Cr.App. 1980); *Darrington v. State,* 623 S.W.2d 414 (Tex.Cr.App.1981). And the court is not authorized to consider it. *Johnston v. State,* 396 S.W.2d 404 (Tex.Cr.App.1965), cert. den. 384 U.S. 1024, 86 S.Ct. 1976, 16 L.Ed.2d 1029. In such situations there is no error in the court's refusal to hear the testimony of the jurors. *Fontenot v. State,* 426 S.W.2d 861 (Tex.Cr.App.1968); *Perbetsky v. State,* 429 S.W.2d 471 (Tex.Cr. App.1968); *Mendoza v. State,* 442 S.W.2d 690 (Tex.Cr.App.1969). See also *Mason v. State,* supra; *Lolmaugh v. State,* supra.

These requirements result from the policy of the law which is to discourage "fishing expeditions" in an effort to impeach a jury verdict. *Prince v. State,* 158 Tex. Cr.R. 320, 254 S.W.2d 1006, 1011 (1953); *Stephenson v. State,* 494 S.W.2d 900, 908– 909 (Tex.Cr.App.1973). See also *Clark v. State,* 163 Tex.Cr.R. 54, 289 S.W.2d 288 (1956); *Moore v. State,* 160 Tex.Cr.R. 642, 275 S.W.2d 673 (1955); *Hicks v. State,* 75 Tex.Cr.R. 461, 171 S.W. 755 (Tex.Cr.App. 1914).

In *Vyvial v. State,* 111 Tex.Cr.R. 111, 10 S.W.2d 83, 84, 85 (1928), it was stated:

"[T]o hold otherwise would authorize in every case the making of general indefinite motions for new trial upon information and belief without specific averment of fact or supporting affidavit, and in such form as that same would not support prosecutions for perjury, which would compel trial courts to order process for any and all parties that might be desired and to enable the parties thus convicted to go upon limitless fishing expeditions."

See also *Bearden v. State,* 648 S.W.2d 688 (Tex.Cr.App.1983).

In *Cartwright v. State,* 612 S.W.2d 609 (Tex.Cr.App.1981), a panel decision by this Court, it was held a juror's affidavit need not be considered when it is not attached to

nor incorporated in a properly *verified* motion for new trial based on jury misconduct. *Cartwright* seems in accord with the authorities discussed above. However, this Court in *Bearden v. State,* 648 S.W.2d 688 (Tex.Cr.App.1983), overruled *Cartwright* and held that a motion for new trial based on jury misconduct does not necessarily have to be verified by a defendant or his attorney if supported by an affidavit.[4] In *Bearden* the motion was supported by a juror's affidavit. *Bearden,* of course, must be read with care. If an unverified motion is broader than the affidavit, then the unsupported parts of the motion may constitute insufficient pleading, and the court may not be required to consider those parts. *Johnston v. State,* 396 S.W.2d 404 (Tex.Cr.App.1965).

It is here observed that the motion for new trial in the instant case was not sworn to by either the appellant or his attorney. Under a long line of decisions in place at the time the trial judge acted on June 14, 1982, the motion was fatally defective, *Carruthers v. State,* supra, and did not require a hearing. *Pate v. State,* supra. Only since *Bearden v. State,* supra, decided in 1983, after the trial judge's ruling may an attached affidavit supply the missing verification to a motion for new trial based on jury misconduct. The trial judge was not in error when he ruled. If *Bearden* is to be applied to the instant case, the allegations in the juror's affidavit concerning jury misconduct can be reviewed.

The unsworn motion for new trial contained these general allegations:

"III.

"The verdict of the jury was decided by the quotient and was an unfair ex-

pression of opinion by the jurors. (See Affidavit of John Gregory, attached as 'Exhibit B.')

"IV.

"The Defendant's right to trial by a fair and impartial jury was prejudiced when one of the juror's (sic) heard prejudicial remarks about the Defendant made outside the record by a witness in the case during a conversation between the juror and the witness on the elevator prior to the sentencing phase of the trial. This is fundamental error as the right to trial by an impartial and fair jury is guaranteed to the Defendant by the Texas and United States Constitutions and the Texas Code of Criminal Procedure. (See Affidavit of John Gregory, attached as 'Exhibit B.')

\* \* \* \* \* \*

"IX.

"The jury discussed parole several times in reaching its decision on the punishment to be given the Defendant. This misconduct resulted in an unfair verdict against the Defendant and was fundamental error in violation of due process of law. (See 'Exhibit B' attached.)"

The motion concluded:

"WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court will set aside the Defendant's judgment of conviction and grant the Defendant herein a new trial in this cause, and thereafter dismiss said cause for lack of prosecution."

There was no request in the motion for a hearing or for the issuance of subpoenas in

---

**4.** *Bearden* held that the authorities cited in *Cartwright* itself did not support its holding as three cases cited involved motion for new trial based on newly discovered evidence rather than on jury misconduct. Two cases cited involved a juror's affidavit sworn to before the defendant's attorney which rendered the affidavit fatally defective. Cf. *Harvey v. State,* 150 Tex.Cr.R. 332, 201 S.W.2d 42, 45 (1947), the Court, discussing a motion for new trial alleging jury

misconduct, concluded that "reasonable notice should be given not only the trial court but the State, as well, as to the misconduct relied upon...." Citing *Harvey,* this Court in *Trout v. State* (Tex.Cr.App. No. 270–84) (Oct. 30, 1985), stated "An instance of jury miscondut included in a supporting affidavit but not in the motion for new trial is not 'reasonable notice.'"

order that appellant might develop evidentiary support for his allegations.

The affidavit of juror Gregory stated in part:

" 'We had no trouble finding Mr. McIntyre (sic) guilty. We didn't spend very much time at all reviewing the evidence because I think we all were agreed from the beginning that Mr. McIntyre (sic) was guilty.

\* \* \* \* \* \*

" '... On the morning that we began deliberating on the punishment to be given Mr. McIntyre (sic), there was some disagreement between us as to how many years he should get. I thought he ought to get at least ten years because if he got less than ten years we would all have to decide whether to give the defendant probation. And I remember that we couldn't agree right away how much punishment he should get. One lady said she felt he should get five years because he was a church member. But I would have fought her tooth and nail if she hadn't changed her mind after lunch. I really think she just wanted to stay long enough so she wouldn't have to go back to work. But I wanted to go back to work that afternoon and was hoping to get the sentencing done before lunch. But we couldn't agree and the judge told us we could go to lunch. During the evening adjournment of the guilt/innocence phase, after I had picked up my newspaper from the jury room I got on the elevator to leave. While I was on the elevator, one of the witnesses came over to me and saw my jury button and asked which court I was in. I told him I was in Judge Hester's court. He asked me if it was Mr. McIntyre's (sic) case and I nodded my head—I didn't say anything to him. He said, "What do you do with a guy like that?" The witness was the older one of the two Mormons who testified. I didn't say anything, I just left.

" 'After lunch I remember one of the jurors suggested we ought to figure out what each one of us thought Mr. McIntyre (sic) should get and then we should just take the average. He thought that that would be a good way to do it. One of the other jurors, a slim Mexican-American man, said that if we were going to do that, then he thought Mr. McIntyre (sic) should get fifty years. I figure he wanted to make his number high so the average would be higher. I remember him saying something about not wanting that pantywaist, McIntyre (sic), around for a long time. Anyway, we made out little slips of paper with the number of years we thought he should get on it and one of the women jury members came around and picked it up. Then we averaged them all up and the average was twenty-seven years. The two jurors who were holding out for less than ten years agreed to change to twenty-five years and that's how we all finally agreed to twenty-five years. You know it's hard to agree about how many years a guy like that ought to get. If we had agreed on ninety-nine years, it wouldn't have mattered to me because you figure he'll get out on parole sooner or later. Of course we all discussed parole several times before we finally agreed on the twenty-five years. I remember someone saying during one of the discussions about parole, "How do you rehabilitate a man like that?" During the time when we wrote out our pieces of paper, I think I wrote down fifteen years. This was right after lunch when we wrote out our pieces of paper....' "

## Quotient Verdict

A new trial is called for where the jury, in assessing the penalty, agrees to divide by twelve (in a district court) the total of the number of years of imprisonment suggested by each juror, and to adopt the quotient as their verdict. *Ramsey v. State*, 140 Tex.Cr.R. 561, 146 S.W.2d 192 (1940); 25 Tex.Jur.3rd, Criminal Law, § 3484, p. 351. Before a new trial will be granted on this basis, however, the jurors must have agreed to be bound by the result of the averaging process. Absent such an agreement, there is no error in the jurors using

this device. *Martinez v. State,* 496 S.W.2d 612, 613 (Tex.Cr.App.1973); *Brown v. State,* 475 S.W.2d 938, 959 (Tex.Cr.App. 1971), and cases there cited. See also *Davis v. State,* 419 S.W.2d 648 (Tex.Cr.App. 1967). "If it appears that the jury did not accept or agree to the quotient obtained, but agreed on a different penalty, a motion for new trial will ordinarily be denied." 25 Tex.Jur.3rd, Criminal Law, § 3484, p. 352; *Martinez v. State,* supra; *Harris v. State,* 114 Tex.Cr.R. 647, 26 S.W.2d 225 (1930). Juror Gregory stated the jurors agreed to an "averaging." He did not assert there was an agreement to be bound by the averaging process. In fact, Gregory noted they agreed on a different penalty. The majority would hold that a mere allegation of "averaging" would entitle a defendant to a hearing on his new trial motion even if a different penalty was assessed. This does nothing but authorize a fishing expedition which is prohibited. The majority is wrong.

### Parole Law

It is common knowledge that inmates are released on parole. *McCartney v. State,* 542 S.W.2d 156 (Tex.Cr.App.1976); *Austin v. State,* 531 S.W.2d 615, 618 (Tex.Cr.App. 1975); *Taylor v. State,* 420 S.W.2d 601 (Tex.Cr.App.1967), and cases there cited. See also *Heredia v. State,* 528 S.W.2d 847 (Tex.Cr.App.1975). Not every mention or misstatement of the parole law or other improper comment calls for reversal. *Slanker v. State,* 505 S.W.2d 274 (Tex.Cr. App.1974); *Jones v. State,* 462 S.W.2d 578 (Tex.Cr.App.1970). In *Munroe v. State,* 637 S.W.2d 475 (Tex.Cr.App.1982), this Court did establish the test that if any single juror voted for increased punishment because of a discussion of the parole laws reversal would follow. The Court of Appeals found the juror's affidavit did not meet the test in *Munroe* and did not require a hearing on the new trial motion. *Munroe* has now been overruled by *Sneed v. State,* 670 S.W.2d 262 (Tex.Cr.App.1984). The five-prong test established in *Sneed* requires the defendant to show (1) that a misstatement of the parole law (2) asserted

as a fact was made (3) by someone professing to know the law (4) which was relied upon by other jurors (5) who for that reason change their vote to a harsher punishment. There is nothing in the affidavit to indicate reasonable grounds to believe jury misconduct occurred as to a discussion of the parole law under either *Munroe* or *Sneed.* Here again the majority is in error.

The juror's affidavit stated that when leaving after adjournment at the guilt/innocence phase of the trial he was approached by a defense character witness who had testified appellant was an elder in the Mormon church. When the witness determined the juror was a juror in Judge Hester's court and in appellant's case, he stated: "What do you do with a guy like that?" The juror did not respond and left.

The Court of Appeals found the "conversation" was an unsolicited question from one of appellant's own character witnesses, and did not concern the "specifics of appellant's proceedings."

Under the 1925 Code of Criminal Procedure, it was provided by statute (Article 671, C.C.P.) that the jury was required to be sequestered in felony cases. Under the former Code unauthorized conversation or communication between a juror and an unauthorized person out of court was presumed to be injurious in felony cases. *Cole v. State,* 157 Tex.Cr.R. 469, 250 S.W.2d 201 (1952); 25 Tex.Jur.3rd, Criminal Law, § 3518, p. 428. Under the 1965 Code of Criminal Procedure, it is discretionary with the court in felony cases as to whether the jury may be separated, within certain limits. Article 35.23, V.A.C.C.P.

"If a jury is not sequestered, there is no presumption of harm where it is shown that a juror spoke to some other person. The mere showing by the defendant, where the jury has been permitted to separate, that a juror conversed with another does not impose on the state the burden of showing that the conversation did not relate to the case. Rather, the burden is on the defendant to show that the conversation was about

the case to support a motion for new trial."

25 Tex.Jur.3rd, Criminal Law, § 3518, pp. 429, 430; *Maldonado v. State*, 507 S.W.2d 206 (Tex.Cr.App.1974); *Romo v. State*, 631 S.W.2d 504 (Tex.Cr.App.1982). It is generally presumed that a defendant is injured whenever an impaneled juror converses with an unauthorized person about a case. *Romo v. State*, 631 S.W.2d 504 (Tex.Cr. App.1982); *Ex parte Watson*, 606 S.W.2d 902 (Tex.Cr.App.1980). The presumption is rebuttable if the case was not in fact discussed or if nothing prejudicial to the accused was said. See *Chambliss v. State*, 633 S.W.2d 678 (Tex.App.—El Paso 1982).

Here it appears that the juror was free to separate. The affidavit stated it was at the "evening adjournment of the guilt/innocence phase" when he was approached by one of the two Mormons who had "testified." The record reflects the two Mormons testified on the morning of May 12, 1982, and that afternoon the case was submitted to the jury at the guilt/innocence stage of the trial. The jury returned its verdict at 3:05 p.m., and were discharged at 3:12 p.m., and excused until 9:30 a.m. on May 13, 1982. The "evening adjournment" after the Mormons had testified would have been after the verdict of guilty. The witness said: "What do you do with a guy like that?" The juror ignored the remark and said nothing. Under these circumstances any presumption of harm raised by the affidavit was rebutted by the other allegations in the affidavit and the record. There is no necessity for a hearing for the State to rebut any such presumption. Here again the majority errs.

The trial judge acted in accordance with the case law in effect at the time in overruling the motion for new trial since the motion was sworn to, and nothing was presented "for hearing." *Pate v. State*, supra. If the later decided *Bearden* case is applied, then still nothing is presented for "hearing" in view of the juror's affidavit for the reasons stated above.

In another ground of review appellant argues he had an absolute right to have his motion heard. This is not so. There is no automatic hearing rule. A motion for new trial may be overruled by operation of law. See Article 40.05(c), V.A.C.C.P. As has been seen, if the pleadings are not in proper form, no hearing on the new trial motion is absolutely required. The questions presented by appellant's motion were determinable from the record and juror Gregory's affidavit. Under these circumstances there was no error in overruling the motion for new trial without an evidentiary hearing. See *Darrington v. State*, 623 S.W.2d 414 (Tex.Cr.App.1981); *Hilton v. State*, 443 S.W.2d 843 (Tex.Cr.App.1969). See also *United States v. Chagra*, 735 F.2d 870 (5th Cir.1984).

The granting or denying of a motion for new trial rests within the discretion of the trial court, and in absence of an abuse of discretion the appellate court is not normally justified in reversing that decision on appeal. See generally 25 Tex.Jur.3rd, Criminal Law, § 3570, p. 508. While many cases cited for this proposition involve cases where there has been a hearing on the motion for new trial, e.g., *Appleman v. State*, 531 S.W.2d 806 (Tex.Cr.App.1976); *Beal v. State*, 520 S.W.2d 907 (Tex.Cr.App. 1975); *McCartney v. State*, 542 S.W.2d 156, 162 (Tex.Cr.App.1976), it is not always so limited. It is applicable where the court denies motion without evidentiary hearing. See *Menjares v. State*, 456 S.W.2d 946 (Tex.Cr.App.1970); *Cooper v. State*, 146 Tex.Cr.R. 449, 176 S.W.2d 190 (1943); *Benavides v. State*, 17 S.W.2d 1068 (Tex.Cr. App.1929); *Ross v. State*, 100 Tex.Cr.R. 295, 273 S.W. 582 (1925). See also *United States v. Johnson*, 596 F.2d 147 (5th Cir. 1979).

In the instant case, in my opinion, the court did not abuse its discretion. The judgment of the Court of Appeals should be affirmed.

The majority of this Court should either "fish or cut bait." If the majority believes that the appellant has been improperly denied an evidentiary hearing on his motion for new trial, they should set the conviction aside, no ifs, ands or buts. The delay,

already too long, should not be prolonged or the finality of the judgment held in suspension. To engraft upon the Texas system of criminal jurisprudence a feasibility study or hearing to determine whether a hearing on the motion for new trial can now be had, and if it can, then a hearing on the new trial motion three years or so after the fact, is a giant leap in the wrong direction and towards an automatic hearing rule on all new trial motions.[5]

I dissent, as the late Judge Morrison used to say, with all the vigor at my command.

W.C. DAVIS, J., joins this opinion.

---

**5.** The majority does not make clear that if a hearing on the motion for new trial is had, whether it should be limited to the issues of jury misconduct, here discussed, or whether the motion and all its allegations are to be considered. Can the motion be amended before the belated hearing? These and other questions are left unanswered.