NO. 07-01-0165-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MAY 16, 2002



______________________________




ABRAHAM MICHAEL LINSCOMB, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 182ND DISTRICT COURT OF HARRIS COUNTY;



NO. 798577; HONORABLE JEANNINE BARR, JUDGE



_______________________________



Before BOYD, C.J., and QUINN and REAVIS, JJ.

 Pursuant to a plea of guilty for aggravated sexual assault of a child, appellant
Abraham Michael Linscomb was granted deferred adjudication for ten years, placed on
community supervision, and assessed a $300 fine. Upon the State's motion to proceed
with an adjudication of guilt, appellant entered a plea of not true and a hearing was
conducted. After finding that appellant had violated numerous conditions of his community
supervision, the trial court adjudicated him guilty and sentenced him to 35 years
confinement. Although appellant filed a pro se notice of appeal, after counsel was
appointed, a second notice of appeal was timely filed reciting all the specifications of Rule
25.2(b)(3) of the Texas Rules of Appellate Procedure. Presenting five points of error, he
asserts (1) he should have been granted a new trial because the trial court considered
inadmissible polygraph evidence resulting in a violation of his due process rights under
the Texas Constitution; (2) the trial court abused its discretion in denying his motion and
request for an evidentiary hearing with live testimony instead of a "paper hearing by
affidavit" regarding his motion for new trial based on ineffective assistance of counsel; (3)
he was denied effective assistance of counsel at the adjudication and punishment phases;
(4) the trial court abused its discretion in rejecting his reinstatement of his deferred
probation and instead sentencing him to 35 years confinement resulting in a violation of
his due process rights under the Texas Constitution, and (5) the trial court's imposition of
a 35-year sentence for his first offense violated his right to be free from cruel and unusual
punishment under the United States Constitution. Based upon the rationale expressed
herein, we affirm.

 Initially, the State asserts that under article 42.12, section (5)(b) of the Texas Code
of Criminal Procedure Annotated (Vernon Supp. 2002), we do not have jurisdiction to
review any of appellant's contentions addressed to the trial court's determination to
adjudicate guilt and that only issues relating to appellant's punishment may be considered. 
We agree to a certain extent. Article 42.12, section (5)(b) does not bar appellate review
of all proceedings after an adjudication of guilt. Thus, in addition to issues relating to
appellant's punishment, we also have jurisdiction to review any issues raised by motion
for new trial, a post-conviction proceeding, that are unrelated to his conviction. See
Daniels v. State, 63 S.W.3d 67, 69 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd )
(holding that appellate review of a claim that the trial court failed to hold a hearing on a
motion for new trial is not barred by article 42.12, section (5)(b) because it does not arise
from the determination to adjudicate guilt). 

Notice of Appeal


 Rule 25.2(b)(3) provides that in order for a notice of appeal to properly invoke this
Court's jurisdiction following a judgment entered on a negotiated guilty plea, the notice
must (A) specify that the appeal is for a jurisdictional defect; (B) specify that the substance
of the appeal was raised by written motion and ruled on before trial; or (C) state that the
trial court granted permission to appeal. After counsel was appointed, he filed the
following notice of appeal which provides in part:

 The Defendant further alleges that if this appeal is from a judgment rendered
on a plea of guilty or nolo contendere that the trial court granted permission
to appeal, or that if the trial court did not exceed the prosecutor's
recommended punishment, that this appeal is for a jurisdictional defect, or
that the substance of the appeal was raised by written motion and ruled on
before trial. 


Rule 25.2(b)(3) does not mean that our jurisdiction is properly invoked by the filing of a
specific notice of appeal complying only in form with the extra-notice requirements of the
rule. Sherman v. State, 12 S.W.3d 489, 492 (Tex.App.-Dallas 1999, no pet.). An
appellant must in good faith comply in both form and substance with the extra-notice
requirements of the rule. Id. Not only must the notice of appeal recite the applicable extra-notice requirements, the record must also substantiate the recitations. Betz v. State, 36
S.W.3d 227, 228-29 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Noncompliance, either
in form or in substance, will result in failure to properly invoke this Court's jurisdiction over
an appeal to which the rule applies. Flores v. State, 43 S.W.3d 628, 629
(Tex.App.-Houston [1st Dist.] 2001, no pet.). 

 Nevertheless, in Vidaurri v. State, 49 S.W.3d 880, 885 (Tex.Cr.App. 2001), the
Court held that the extra-notice requirements of Rule 25.2(b)(3) of the Texas Rules of
Appellate Procedure do not apply to claims that are unrelated to the trial court's
determination to adjudicate guilt. Thus, a general notice of appeal properly invokes our
jurisdiction to consider any claims raised by appellant unrelated to his conviction.

 By his first point of error, appellant asserts that he should have been granted a new
trial because the trial court considered polygraph evidence at the adjudication hearing in
violation of his due process rights under the Texas Constitution. This contention is a
challenge to the trial court's determination to adjudicate guilt which cannot be considered
on appeal. Connolly v. State, 983 S.W.2d 738, 741 (Tex.Cr.App. 1999); Cooper v. State,
2 S.W.3d 500, 502 (Tex.App.-Texarkana 1999, pet. ref'd) (holding that a complaint that
the trial court admitted evidence in violation of the defendant's constitutional rights was an
attempt to appeal from the decision to adjudicate guilt). We have no jurisdiction to
consider appellant's first point of error.

 By his second point of error, appellant contends the trial court abused its discretion
in denying his motion and request for an evidentiary hearing with live witness testimony
instead of a "paper hearing by affidavit" regarding his motion for new trial raising grounds
of ineffective assistance of his trial counsel. We disagree. A motion for new trial is a post-adjudication proceeding; therefore, article 42.12, section 5(b) does not foreclose appellate
review of appellant's claim as it relates to issues other than the trial court's determination
to adjudicate guilt. Daniels, 63 S.W.3d at 69; see also Amaro v. State, 970 S.W.2d 172,
173 (Tex.App.-Fort Worth 1998, no pet.) (holding that a motion for new trial contention
that the trial court erred in failing to hold a hearing does not arise from the determination
to adjudicate guilt).

 Rule 21.7 of the Texas Rules of Appellate Procedure authorizes a trial court to
receive evidence at a hearing on a motion for new trial by affidavit or otherwise. A trial
court's decision on a motion for new trial may be based on sworn pleadings and affidavits
admitted into evidence without hearing oral testimony. McIntire v. State, 698 S.W.2d 652,
658 (Tex.Cr.App. 1985); Scaggs v. State, 18 S.W.3d 277, 281 (Tex.App.-Austin 2000, pet.
ref'd). The trial court held a hearing on appellant's motion and received three affidavits
into evidence. However, two of the three affidavits in support of appellant's motion were
acknowledged by appellant's attorney. Affidavits sworn to before a movant's attorney are
insufficient to support a motion for new trial. Garza v. State, 630 S.W.2d 272, 273-74
(Tex.Cr.App. 1982); Stubbs v. State, 457 S.W.2d 563, 564 (Tex.Cr.App. 1970). The third
affidavit was not notarized by counsel; however, appellant received a hearing on his
motion for new trial albeit by affidavit and not live testimony in compliance with Rule 21.7. 
Thus, the trial court did not abuse its discretion in denying appellant's request for a
hearing with live witnesses. Point of error two is overruled.

 By his third point of error, appellant complains that trial counsel was ineffective in
failing to properly and independently investigate exculpatory testimony of potential defense
witnesses. By his argument, appellant alleges counsel was ineffective at both the
adjudication phase and the punishment phase. We do not have jurisdiction to consider
appellant's assertion that trial counsel was ineffective during the adjudication hearing. 
Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b). However, we may consider appellant's
contention that trial counsel was ineffective during the punishment hearing. Vidaurri, 49
S.W.3d at 885. Appellant contends that the testimony of three specific witnesses which
trial counsel failed to present during the punishment phase would have resulted in a lower
sentence than the 35-year sentence actually imposed. We disagree.

 Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984), a defendant claiming ineffective assistance of counsel must establish that (1)
counsel's performance was deficient (i.e., fell below an objective standard of
reasonableness, and (2) there is a reasonable probability that but for counsel's deficient
performance, the result of the proceeding would have been different. Hernandez v. State,
726 S.W.2d 53, 55 (Tex.Cr.App. 1986). A strong presumption exists that defense
counsel's conduct falls within a wide range of reasonable representation. Strickland, 466
U.S. at 690, 104 S.Ct. at 2064, 80 L.Ed.2d at 695; Dewberry v. State, 4 S.W.3d 735, 757
(Tex.Cr.App. 1999), cert. denied, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

 Appellant's conviction for aggravated sexual assault of a child, a first degree felony,
carries a penalty of five to 99 years confinement. Tex. Pen. Code Ann. § 12.32(a) (Vernon
1994) and § 22.021(e) (Vernon Supp. 2002). A trial court is vested with a great degree of
discretion in imposing an appropriate sentence. Jackson v. State, 680 S.W.2d 809, 814
(Tex.Cr.App. 1984) (en banc). A penalty imposed within the range of punishment
established by the Legislature should not be disturbed on appeal. Nunez v. State, 565
S.W.2d 536, 538 (Tex.Cr.App. 1978). 

 Appellant's 35-year sentence is substantially below the maximum term of 99 years. 
His contention that the testimony of three witnesses would have resulted in a lower
sentence is not substantiated by the record. A challenge of ineffective assistance must
be firmly founded in the record. Mercado v. State, 615 S.W.2d 225, 228 (Tex.Cr.App.
1981). He does not indicate what the testimony of the witnesses would have shown, but
merely alleges that "but for the error of counsel in failing to subpoena and present
testimony" of three named witnesses, he would not have received a 35-year sentence. 
Appellant has not affirmatively demonstrated prejudice. Garcia v. State, 887 S.W.2d 862,
880 (Tex.Cr.App. 1994), cert. denied, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223
(1995). Although the record on direct appeal is undeveloped, appellant may have
recourse for his complaint by submitting an application for a post-conviction writ of habeas
corpus. Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon Supp. 2002); see also Oldham v.
State, 977 S.W.2d 354, 363 (Tex.Cr.App. 1998), cert. denied, 525 U.S. 1181, 119 S.Ct.
1121, 143 L.Ed.2d 116 (1999). Point of error three is overruled.

 By his fourth point of error, appellant alleges that his due process rights under the
Texas Constitution were violated when the trial court abused its discretion in rejecting
reinstatement of his deferred probation and sentencing him to an excessive term of 35
years confinement for aggravated sexual assault of a child. By his fifth point of error, he
asserts that his sentence for his first offense constitutes a violation of his right under the
Eighth Amendment to the United States Constitution to be free from cruel and unusual
punishment. We have jurisdiction to consider these points because appellant challenges
only punishment and not the trial court's decision to adjudicate guilt. Vidaurri, 49 S.W.3d
at 885.

 At the time his sentence was pronounced, appellant did not present any objections
or motions alleging that his 35-year sentence was grossly disproportionate to the crime
and thus constituted cruel and unusual punishment. Thus, he has not preserved his
complaint for appellate review. Tex. R. App. P. 33.1(a); see Smith v. State, 721 S.W.2d
844, 855 (Tex.Cr.App. 1986) (noting that every right, constitutional or statutory, may be
waived by failure to object) ; see also Smith v. State, 10 S.W.3d 48, 49
(Tex.App.-Texarkana 1999, no pet.) (holding that a complaint of a statute's
unconstitutionality for authorizing punishment that is grossly disproportionate to the crime
was not preserved for review); Solis v. State, 945 S.W.2d 300, 301 (Tex.App.-Houston [1st
Dist.] 1997, pet. ref'd) (holding that error was not preserved on a complaint that a sentence
was grossly disproportionate to the offense). However, in the interests of justice we will
consider appellant's contentions. By his arguments under his fourth and fifth points, he
contends that his sentence is "grossly disproportionate to the seriousness of the offense
actually committed." We disagree. 

 Citing Nunez, 565 S.W.2d at 538, appellant acknowledges that a sentence within
the statutory limits will not be disturbed on appeal. However, he challenges the Texas
statutory sentencing scheme for not imposing limits on the sentencing discretion of a trial
judge. Judicial discretion is defined as discretion bounded by the rules and principles of
law, and not arbitrary, capricious, or unrestrained; the exercise of judicial judgment based
on facts and guided by law; discretion exercised in discerning the course prescribed by law
without giving effect to the will of the judge. Black's Law Dictionary 467 (6th ed. 1990). 
By imposing a 35-year sentence within the limits prescribed by section 12.32(a) of the
Penal Code, the trial court did not abuse its discretion.

 Without referencing section 12.32 of the Penal Code, appellant further asserts that
the sentencing "statute itself is unconstitutional and any sentence imposed thereunder
must be set aside." In his brief, appellant reviews numerous federal cases; however, he
does not show that in its operation, section 12.32 of the Penal Code is unconstitutional as
applied to him. It is incumbent upon a defendant to show that a statute is unconstitutional
as to him in his situation. McFarland v. State, 928 S.W.2d 482, 521-22 (Tex.Cr.App.
1996), cert. denied, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). An appellant
must adequately brief a constitutional issue by proffering specific arguments and
authorities supporting his contentions. Hicks v. State, 15 S.W.3d 626, 631
(Tex.App.-Houston [14th Dist.] 2000, pet. ref'd), citing Lawton v. State, 913 S.W.2d 542,
558 (Tex.Cr.App. 1995), cert. denied, 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed. 2d 44 (1996). 
Otherwise, his contentions are inadequately briefed. Tex. R. App. P. 38.1(h).

 An argument that punishment imposed is grossly disproportionate to the offense
survives under the Eighth Amendment apart from any consideration of whether the
punishment assessed is within the range established by statute. In our analysis we are
guided by the criteria set forth in Solem v. Helm, 463 U.S. 277, 290-92, 103 S.Ct. 3001,
77 L.Ed.2d 637 (1983). Those criteria are (1) the gravity of the offense and the harshness
of the punishment; (2) the sentences imposed on other criminals in the same jurisdiction;
and (3) the sentences imposed for the same offense in other jurisdictions. Id. We first
compare the gravity of the offense against the severity of the sentence in light of the harm
caused or threatened to the victim or society and the culpability of the offender. Only if we
determine that the sentence is grossly disproportionate to the offense do we consider the
remaining two Solem factors. Id. 

 Appellant pleaded guilty to intentionally and knowingly causing the sexual organ of
a child under the age of 14 to contact his sexual organ. A psychiatric examination
established that appellant was sane and that he knew the conduct charged was wrong. 
According to the psychiatric evaluation, appellant had a problem with setting fires and was
hospitalized in a psychiatric facility during his early teens for attempting to burn down the
apartment he and his mother lived in. Although he admitted a history of drug use, he
claimed that at the time of the charged offense, he was sober adding that "bad things
happen to him when he is sober," and explained that he sexually assaulted a neighbor's
child and described it like a dream he went along with. Appellant was charged with
aggravated sexual assault of a child, a first degree felony punishable from five to 99 years
confinement and a $10,000 fine. Tex. Pen. Code Ann. §§ 12.32 and 22.021(e). 
Considering appellant's history and the gravity of the crime, we conclude that his 35-year
sentence is not grossly disproportionate to the offense. Cf. Alvarez v. State, 63 S.W.3d
578, 580 (Tex.App.-Fort Worth 2001, no pet.) (holding that a 55-year sentence for
aggravated sexual assault of a child was not grossly disproportionate). Points of error four
and five are overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice


Do not publish.



 mso-generic-font-family:swiss;
 mso-font-format:other;
 mso-font-pitch:variable;
 mso-font-signature:3 0 0 0 1 0;}
 /* Style Definitions */
 p.MsoNormal, li.MsoNormal, div.MsoNormal
 {mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
h1
 {mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Heading 1 Char";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:1;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-font-kerning:0pt;
 mso-bidi-language:EN-US;}
h2
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 2 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:2;
 font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h3
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 3 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:3;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h4
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-bidi-language:EN-US;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0318.cr%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0318.cr%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0318.cr%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0318.cr%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-even-header:url("07-10-0318.cr%20opinion_files/header.htm") eh1;
 mso-header:url("07-10-0318.cr%20opinion_files/header.htm") h1;
 mso-even-footer:url("07-10-0318.cr%20opinion_files/header.htm") ef1;
 mso-footer:url("07-10-0318.cr%20opinion_files/header.htm") f1;
 mso-first-header:url("07-10-0318.cr%20opinion_files/header.htm") fh1;
 mso-first-footer:url("07-10-0318.cr%20opinion_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-0318-CR

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



APRIL
21, 2011

 



 

RENE L. FRANCO,  

 

                                                                                         Appellant


v.

 

THE STATE OF TEXAS,  

 

                                                                                         Appellee

___________________________

 

FROM THE 121ST DISTRICT COURT OF TERRY
COUNTY;

 

NO. 5920; HONORABLE KELLY G. MOORE,
PRESIDING

 



 

Opinion

 



 

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

            Rene L.
Franco challenges his conviction of sexual assault of a child by contending 1)
the evidence is legally insufficient to support it, and 2) the trial court
erred in admitting evidence that improperly bolstered the complainants
purported truthfulness.  We affirm the
judgment. 

            Sufficiency of the Evidence

            We review the sufficiency of the
evidence under the standard discussed in Jackson
v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and Brooks v. State, 323 S.W.3d 893, 902
(Tex. Crim. App. 2010).  Next, appellant
was charged with intentionally and knowingly causing the penetration of the
sexual organ of his niece (by marriage), who was under seventeen years of age,
by his sexual organ.  See Tex.
Penal Code Ann. §22.011(a)(2) (Vernon Supp. 2010).  At trial, the complainant testified that
appellant raped her by putting his penis inside her vaginal area when she
stayed the night at the home of her aunt and uncle.  She did not report the attack until a month
later when she was being disciplined for allowing a boy to enter her bedroom at
night for the purpose of having sex.   The
evidence allegedly is insufficient to prove guilt because it consists of a string
of misleading facts and inconsistent testimony from the complainant.  We overrule the issue.

            The testimony of the complainant alone,
if believed by the jury, is sufficient to support the conviction.  Tex.
Code Crim. Proc. Ann. art. 38.07(a) (Vernon 2005); Perez v. State, 113 S.W.3d 819, 838 (Tex. App.Austin 2003, pet.
refd), overruled in part on other
grounds by Taylor v. State, 268 S.W.3d 571 (Tex. Crim. App. 2008); Jensen v. State, 66 S.W.3d 528, 534
(Tex. App.Houston [14th Dist.] 2002, pet. refd). Any
inconsistencies in the evidence were for the jury to resolve, as were issues
regarding the credibility of the complainant and the other witnesses, and we
are required to defer to its determination on those issues.[1]   Brooks
v. State, 323 S.W.3d at 902 n.19.  

            

 

Admission of
Evidence    

            Appellant next complains about the admission
into evidence of testimony from the complainants mother regarding the
truthfulness of her daughters allegations.[2]  We overrule the issue.

            Appellant objected below to the utterance
on the basis that it constituted a conclusion.  Now, he suggests that it was inadmissible as
an attempt to impermissibly bolster the credibility of the complainant in violation
of Texas Rule of Evidence 701.  It is
true that an attempt to bolster the veracity of a complaining witness generally
is prohibited because the testimony is not helpful to the jury and, therefore,
lacks relevance.  Arzaga v. State, 86 S.W.3d 767,
776 (Tex. App.El Paso 2002, no pet.).  That is, it tends to usurp the resolution of
an issue which only a jury can resolve.  Id. (stating that such evidence
is inadmissible because it impermissibly decides an issue for the jury); accord, Reynolds v. State, 227 S.W.3d
355, 365-66 (Tex. App.Texarkana 2007, no
pet.) (stating the same).  Yet, complaining about evidence on this basis
is quite different from complaining about it because certain testimony is a
conclusion.  Conclusions may encompass
most anything, such as conclusions of law, conclusions of fact, and observations
lacking factual support or explanation. 
So too may conclusions be quite relevant, though inadmissible for other
reasons.  Given this, we must conclude
that the objection asserted below fails to comport with that proffered on
appeal.  Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004)
(stating that the complaint on appeal must comport with that made at trial).  Uttering conclusion without more is not
enough to reasonably inform the trial court that the testimony may violate
Texas Rule of Evidence 701 (involving opinions given by lay witnesses) or
constitute impermissible bolstering. 
Consequently, the complaint before us was not preserved below.  See Arzaga v. State, 86 S.W.3d at 776 n.1 (stating that
while a bolstering objection preserves the complaint for review, the better
practice is to object because the testimony lacks relevance or constitutes
improper opinion testimony).  

            Accordingly, the judgment is
affirmed.

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice 

Publish.    











[1]Appellant
particularly points to 1) testimony from a police officer that the complainant
told him she screamed at the time of the assault although she denied at trial
that she had done so, 2) the fact that the complainant told her parents of the
assault only after they were outraged over her behavior with a boy, 3) the use
of penal code language by the complainant in describing the assault, and 4)
the failure of police or the complainants parents to seek a medical exam.   





[2]The
State asked the witness:  Do you believe
your daughter when she told you what [appellant] did to her?  The witness answered: Yes.